**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| WILLIAM HOWARD, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 13-0957 (FLW)(LHG) |
| | : | |
| v. | : | **MEMORANDUM OPINION** |
| | : | |
| STANFORD LAWS, SR., and | : | |
| SAMUEL GIBSON, | : | |
| | : | |
| Defendant. | : | |

**WOLFSON**, **United States District Judge**:

Presently before the Court is a Motion for Entry of Default Judgment by Plaintiff William Howard ("Plaintiff"). In sum, Plaintiff alleges that Defendants Stanford Laws, Sr., and Samuel Gibson ("Defendants"), have, and continue, to infringe upon Plaintiff's registered service mark THE EBONYS, in violation of the Lanham Act. Defendants have not entered an appearance before this Court, nor have they responded to the current Motion. For the reasons that follow, Plaintiff's Motion for Entry of Default Judgment is granted, Defendants are enjoined from further infringement of Plaintiff's mark and from unfair competition with Plaintiff, and Plaintiff's request for compensatory damages, attorney's fees, and costs, is granted subject to the submission of further proofs.

I. BACKGROUND

Plaintiff William Howard has been the lead singer and song writer of a musical group called "the Ebonys" since 1997. [Certification of Howard Laws, ¶ 1]. On July 10, 2011, Plaintiff applied for a service mark on the name "the Ebonys," which was granted and registered by the United States Patent and Trademark Office on July 10, 2012. [Amended Complaint, ¶ 7]. Plaintiff's mark, THE EBONYS, was registered for use in "ENTERTAINMENT SERVICES IN THE NATURE OF LIVE PERFORMANCES BY SINGING VOCALISTS; ENTERTAINMENT IN THE NATURE OF VOCAL MUSICAL GROUP; [and/or] LIVE PERFORMANCES BY A MUSICAL GROUP." [THE EBONYS, Registration No. 4,170,469]. On October 3, 2011, before Plaintiff had successfully registered THE EBONYS mark, his then attorney Harper J. Dimmerman served a letter on Defendants informing them, at that point in time erroneously, of Plaintiff's exclusive ownership of THE EBONYS mark, and instructing them to cease and desist in their use of the mark to advertise for and perform live musical shows. [Am. Compl., ¶ 10]. Later, in August of 2012, after Plaintiff had successfully registered THE EBONYS mark, Plaintiff became aware that Defendants were advertising a live musical performance, using the name "Ebonys" to be held on August 12, 2012. [*Id.* at ¶ 12]. Plaintiff retained new counsel, Kathryn Hewitt, who sent another cease and desist letter to Defendants by certified mail on August 7, 2012. [*Ibid.*]. Defendants went forward with the August 12 performance, using the name "Ebonys" after the delivery of Plaintiff's letter. [*Id.* at ¶14]. Plaintiff alleges that Defendants continue to infringe upon THE EBONYS mark in their marketing and performances. [*Id.* at ¶14].

## II. PROCEDURAL HISTORY

Plaintiff initiated this action by the filing a Complaint on February 15, 2013. Summonses were issued as to Defendants Samuel Gibson and Stanford Laws, Sr., on February 19. Defendant Samuel Gibson was personally served on March 8, 2013, at his address, 6236 Cedar Avenue, Philadelphia, PA. Defendant Stanford Laws, Sr., was served on March 20, 2013, when his wife accepted service at their home at 2148 Cheltenham Avenue, Philadelphia, PA. Plaintiff filed an Amended Complaint on May 21, 2013. Plaintiff requested entry of default against both Defendants on July 24, 2013, which was entered by the Clerk of Court on August 23, 2013. After several incomplete filings, Plaintiff moved for default judgment on April 10, 2014. Defendants neither appeared nor otherwise opposed Plaintiff's motion.

## III. JURISDICTION & STANDARD OF REVIEW

This Court exercises jurisdiction over Plaintiff's Lanham Act claims pursuant to 28 U.S.C. § 1331.

A court may grant default judgment pursuant to Federal Rule of Civil Procedure 55(b)(2). "[T]he entry of a default judgment is left primarily to the discretion of the district court." *Hritz v. Woma Corp.,* 732 F.2d 1178, 1180 (3d Cir. 1984) (citing *Tozer v. Charles A. Krause Milling Co.,* 189 F.2d 242, 244 (3d Cir.1951)). Because the entry of a default judgment prevents the resolution of claims on the merits, "this court does not favor entry of defaults and default judgments." *United States v. $55,518.05 in U.S. Currency,* 728 F.2d 192, 194 (3d Cir.1984). Thus, before entering default judgment, the Court must determine whether the "unchallenged facts constitute a legitimate

cause of action" so that default judgment would be permissible. *Directv, Inc. v. Asher,* 03–cv–1969, 2006 WL 680533, at *1 (D.N.J. Mar. 14, 2006) (citing Wright, Miller, Kane, 10A Federal Practice and Procedure: Civil 3d § 2688, at 58–59, 63).

When considering whether to enter a default judgment, a court may take plaintiff's factual allegations made in the complaint as true, except for those allegations concerning damages, which require further proofs. *Comdyne I, Inc. v. Corbin,* 908 F.2d 1142, 1149 (3d Cir. 1990). *See also Doe v. Simone,* CIV.A. 12–5825, 2013 WL 3772532, at *2 (D.N.J. July 17, 2013) ("[D]efendants are deemed to have admitted the factual allegations of the Complaint by virtue of their default, except those factual allegations related to the amount of damages."). While "courts must accept the plaintiff's well-pleaded factual allegations as true," they "need not accept the plaintiff's factual allegations regarding damages as true." *Id.* (citing *Chanel, Inc. v. Gordashevsky,* 558 F.Supp.2d 532, 536 (D.N.J. 2008)). Moreover, if a court finds evidentiary support to be lacking, it may order or permit a plaintiff seeking default judgment to provide additional evidence in support of the allegations. *Doe,* 2013 WL 3772532, at *2.

Before a court may enter default judgment against a defendant, the plaintiff must have properly served the summons and complaint, and the defendant must have failed to file an answer or otherwise respond to the complaint within the time provided by the Federal Rules, which is twenty-one days. *See Gold Kist, Inc. v. Laurinburg Oil Co., Inc.,* 756 F.2d 14, 18–19 (3d Cir. 1985); Fed. R. Civ. P. 12(a). Here, Defendant was properly served and has failed to respond to the Complaint. The Court is satisfied that the prerequisites to filing a default judgment are met. *See Gold Kist, Inc.*, 756 F.2d at 18–19.

The Court now evaluates three factors: (1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability

of the party subject to default. *Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds,* 250

F.R.D. 171, 177 (D.N.J. 2008) (citing *Emcasco Ins. Co. v. Sambrick,* 834 F.2d 71, 74 (3d Cir.

1987)). The factors weigh in favor of entry of a default judgment.


## IV. PRIMA FACIE LANHAM ACT CLAIM AND POTENTIAL DEFENSES


Under the Lanham Act Section 32, 15 U.S.C. Section 1114(1):

(1) Any person who shall, without the consent of the registrant—
    (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of
a registered mark in connection with the sale, offering for sale, distribution, or
advertising of any goods or services on or in connection with which such use is
likely to cause confusion, or to cause mistake, or to deceive ...
Shall be liable in a civil action by the registrant ....

15 U.S.C.A. § 1114(1)(a). Furthermore, the Lanham Act Section 43(a) proscribes unfair

competition or, as the statute refers to it, "false designation of origin" or "false description." 15

U.S.C.A. § 1125(a). The statute provides that:

(1) Any person who, on or in connection with any goods or services, or any container for
goods, uses in commerce any word, term, name, symbol, or device, or any combination
thereof, or any false designation of origin, false or misleading description of fact, or false
or misleading representation of fact, which—
    (A) is likely to cause confusion, or to cause mistake, or to deceive as to the
affiliation, connection, or association of such person with another person, or as to
the origin, sponsorship, or approval of his or her goods, services, or commercial
activities by another person ...
shall be liable in a civil action by any person who believes that he or she is or is likely to
be damaged by such act.

15 U.S.C.A. § 1125(a)(1)(A).

Claims for federal trademark infringement, 15 U.S.C. § 1114(1), and federal unfair

competition, 15 U.S.C. § 1125(a)(1), are measured by identical standards. Under either provision

of the Lanham Act, a plaintiff must show three elements: "(1) it has a valid and legally protectable

mark; (2) it owns the mark; and (3) the defendant's use of the mark to identify goods or services causes a likelihood of confusion." *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.,* 237 F.3d 198, 210 (3d Cir. 2000) ("We measure federal trademark infringement, 15 U.S.C. § 1114, and federal unfair competition, 15 U.S.C. § 1125(a)(1)(A), by identical standards"). A plaintiff bears the burden of proving these elements. *Id.*

Here, Plaintiff has provided evidence of the first and second elements. That evidence consists of a trademark registration establishing ownership of a valid and legally protectable mark on the name THE EBONYS. A "certificate of registration issued by the United States Patent and Trademark Office constitutes prima facie evidence of the validity and ownership of a disputed mark" and is therefore sufficient to establish the first and second elements of trademark infringement and unfair competition claims. *Coach, Inc. v. Cosmetic House,* No. 10 Civ. 2794, 2011 WL 1211390, *2 (D.N.J. Mar. 29, 2011) (citing 15 U.S.C. §§ 1057(b), 1115(a)). Plaintiff also alleges that he has continuously used the marks at issue since 1997. I am satisfied that the first two elements are met here.

As to the third element, a "likelihood of confusion" exists where "consumers viewing the mark would probably assume that the product or service it represents is associated with the source of a different product or service identified by a similar mark." *Ford Motor Co. v. Summit Motor Prods., Inc.,* 930 F.2d 277, 292 (3d Cir. 1991). Courts consider a variety of factors when assessing whether two marks are likely to cause consumer confusion. In this Circuit these factors include, but are not limited to

> (1) the degree of similarity between the owner's mark and the alleged infringing mark;
> (2) the strength of the owner's mark;
> (3) the price of the goods and other factors indicative of the care and attention expected of consumers when making a purchase;
> (4) the length of time the defendant has used the mark without evidence of actual confusion arising;

6

(5) the intent of the defendant in adopting the mark;

(6) the evidence of actual confusion;

(7) whether the goods, though not competing, are marketed through the same channels of trade and advertised through the same media;

(8) the extent to which the targets of the parties' sales efforts are the same;

(9) the relationship of the goods in the minds of consumers because of the similarity of function;

(10) other factors suggesting that the consuming public might expect the prior owner to manufacture a product in the defendant's market, or that he is likely to expand into that market.

*Freedom Card, Inc. v. JPMorgan Chase & Co.,* 432 F.3d 463, 471 (3d Cir. 2005) (quoting

*Interpace Corp. v. Lapp, Inc.,* 721 F.2d 460, 463 (3d Cir. 1983)).[1] The Third Circuit has

"repeatedly insisted that the *Lapp* factors are not to be mechanically tallied, but rather that they

are tools to guide a qualitative decision." *A & H Sportswear, Inc.,* 237 F.3d at 216. Reviewing

those factors, I find that the Defendant's use of the allegedly infringing marks is likely to cause

consumer confusion.

"The single most important factor in determining likelihood of confusion is mark

similarity." *Id.* Plaintiff alleges, and this Court must accept as true, that Defendants continue to

use THE EBONYS mark with the intent to confuse or deceive consumers. [Am. Compl., ¶14]. Put

most simply, confusion is likely because Defendant has used a mark almost identical to Plaintiffs

valid and legally protectable mark. Marks are confusingly similar if "ordinary consumers would

likely conclude that [the two products] share a common source, affiliation, connection, or

sponsorship." *A & H Sportswear, Inc.,* 237 F.3d at 216 (quoting *Fisons Horticulture, Inc. v. Vigoro*

---

[1] In *Interpace Corp. v. Lapp, Inc.,* 721 F.2d 460 (3d Cir.1983), the Third Circuit promulgated ten nonexclusive factors to guide the likelihood of confusion analysis. However, in setting forth this test, the *Lapp* court noted that, in most circumstances, a court engaging in a likelihood of confusion analysis need not go beyond the mark itself to come to its conclusion. *Id.; see also A & H,* 237 F.3d at 216 ("the general rule that marks should be viewed in their entirety does not undermine the common-sense precept that the more forceful and distinctive aspects of a mark should be given more weight, and the other aspects less weight.").

*Indus., Inc.,* 30 F.3d 466, 477 (3d Cir. 1994)). Where the goods or services are in direct competition — as is the case here because both Plaintiff and Defendants operate musical groups which perform live before audiences — the degree of similarity required to prove likelihood of confusion is less than is required for dissimilar products. *Kos Pharm., Inc. v. Andrx Corp.,* 369 F.3d 700, 713 (3d Cir. 2004) (citation omitted). Here, on at least one specific occasion, the August 12 performance, and on other occasions alleged but not specifically identified in the Complaint, Defendants have marketed performances of their musical group using the name "the Ebonys" or "Ebonys." At these performances they have provided a substantially similar service, namely live vocal performances, to that provided by Plaintiff. I find that the marks are substantially identical and therefore likely to cause confusion to an unsuspecting consumer.

Considering the second factor, the strength of Plaintiff's mark, while "generic marks do not receive trademark protection, arbitrary, suggestive and descriptive marks with a demonstrated secondary meaning are entitled to trademark protection." *Checkpoint Sys., Inc. v. Check Point Software Technologies, Inc.,* 269 F.3d 270, 282–83 (3d Cir. 2001). However, "[i]f the mark at issue is federally registered and has become incontestible, then validity, legal protectability, and ownership are proved." *Commerce Nat. Ins. Servs., Inc. v. Commerce Ins. Agency, Inc.,* 214 F.3d 432, 438 (3d Cir. 2000). "A mark becomes incontestible after the owner files affidavits stating that the mark has been registered, that it has been in continuous use for five consecutive years subsequent to registration, that there is no pending proceeding contesting the owner's rights to registration, and that there has been no adverse decision concerning the registrant's ownership or right to registration." *Commerce Nat. Ins. Servs., Inc. v. Commerce Ins. Agency, Inc.,* 214 F.3d 432, 438, n. 4 (3d Cir.2000) (citing 15 U.S.C. §§ 1058, 1065; *Fisons Horticulture, Inc. v. Vigoro Indus.,* 30 F.3d 466, 472 n. 7 (3d Cir. 1994)). The mark at issue in this case was registered on July

12, 2012, and had only been in effect for a month at the time of the August 12 performance in the lead up to and during which Defendants allegedly infringed Plaintiff's mark. "If the mark has not been federally registered or, if registered, has not achieved incontestability, then validity depends on proof of secondary meaning, unless the unregistered or contestable mark is inherently distinctive.' " *Id.* (quoting *Ford Motor Co. v. Summit Motor Prods.,* 930 F.2d 277, 292 (3d Cir. 1991) (footnotes omitted)). *See United States Jaycees v. Philadelphia Jaycees,* 639 F.2d 134, 142 (3d Cir.1981); 1 McCarthy, *Trademarks and Unfair Competition* at §§ 15:1, 15:2. A distinctive mark is one that is fanciful, arbitrary, or suggestive. *Id.* at n. 5. Arbitrary marks are "those words, symbols, pictures, etc., which are in common linguistic use but which, when used with the goods or services in issue, neither suggest nor describe any ingredient, quality or characteristic of those goods or services." 1 McCarthy, *Trademarks and Unfair Competition* at § 11:4. Fanciful marks "consist of 'coined' words which have been invented for the sole purpose of functioning as a trademark." *Id.* at § 11:3. Marks such as "letters, numbers, product and container shapes, and designs and pictures may also be classed as 'fanciful.' " *Id.* Suggestive marks are virtually indistinguishable from arbitrary marks, *id.* at § 11:4, but have been defined as marks which suggest a quality or ingredient of goods. *Id.* at § 11:20. *Ford Motor Co. v. Summit Motor Products, Inc.*, 930 F.2d 277, 292 (3d Cir. 1991). Here, Plaintiff's mark is arbitrary, because THE EBONYS neither suggests nor describes any quality or characteristic of Plaintiff or Defendants' live musical performances. Accordingly, although the mark in this case was not incontestable, validity, legal protection, and ownership are still proven by Plaintiff's registration.

As to the third factor — purchasers' care and sophistication — I do not find that relevant consumers would exercise such heightened care as to undermine a finding of likely confusion. *See Sabinsa Corp. v. Creative Compounds, LLC,* 609 F.3d 175, 186 (3d Cir. 2010) (reasoning that

where "the relevant products are expensive, or the buyer class consists of sophisticated or professional purchasers, courts have generally not found Lanham Act violations," but "where the group of buyers is a combination of professionals and ordinary consumers, the class as a whole is not held to the higher standard of care") (internal quotations and citation omitted). At issue is the purchase of tickets to a live musical performance to the general public. Accordingly, I will not apply a heightened standard of care to the buyer class.

Considering the fourth factor, no evidence has been presented concerning the length of time Defendants have used the name "Ebonys" *without* confusion. Due to Defendants' default, the only evidence before the Court is that Defendants have been utilizing the name "Ebonys" or THE EBONYS from sometime in 2011 to the present, during the entirety of which period the Plaintiff alleges the use created confusion with the Plaintiff's own musical group, THE EBONYS, which had been led by Plaintiff since 1997.

In regard to the fifth factor, Plaintiff alleges that Defendants continued to use Plaintiff's mark after having been sent a cease and desist letter by certified mail in August of 2012, and after having been served with the Complaint in this case. There is evidence that Defendants used the marks on their promotional materials in the lead up to the August 12, 2012 performance. *See A & H Sportswear, Inc.,* 237 F.3d at 225–26 (holding that "defendant's intent will indicate a likelihood of confusion only if an intent to confuse consumers is demonstrated via purposeful manipulation of the junior mark to resemble the senior's"). While it is possible that Defendants independently decided upon the name "the Ebonys," given the infinite number of possible names for musical groups, the similar geographic area (Philadelphia) in which Defendants and Plaintiff operate their groups, the fact that Defendants have adopted a substantially identical mark, and that Defendants

offered essentially the same service as Plaintiff, it is plausible that Defendant's intent was to confuse consumers in order to profit from the goodwill associated with THE EBONYS brand.

Considering the sixth factor, Plaintiff has provided no evidence of actual confusion.

The seventh, eighth, and ninth factors address the "nature of the services provided, the customers targeted, and the methods used to reach those customers." *Primepoint, L.L.C. v. PrimePay, Inc.,* 545 F. Supp. 2d 426, 444 (D.N.J. 2008) (addressing these factors together). The "greater the similarity in advertising and marketing campaigns, the greater the likelihood of confusion." *Checkpoint Sys., Inc.,* 269 F.3d at 288–89. "When the parties target their sales efforts to the same group of consumers, there is a greater likelihood of confusion between two marks." *Sabinsa Corp. v. Creative Compounds, LLC,* 609 F.3d 175, 188 (3d Cir. 2010). The services and products offered by Plaintiff and Defendant are described very similarly. Moreover, it does not appear that the parties target their sales efforts to a different market segment, or that the parties use different methods of promotion to target these consumers. The parties operate in the same industry and offer similar services. It is therefore reasonable to believe that consumers would be confused by Defendant's use of the marks and would believe Defendant to be associated with Plaintiff.

Here, Defendants have presented no defenses, and in the review of Plaintiffs prima facie case, this Court has not identified any other potentially meritorious defenses. Because Defendants have not sought relief from the entry of default, "this Court is 'not in a position then to determine whether [defendants have] a meritorious defense or whether any delay is the result of culpable misconduct.'" *Piquante Brands Int'l, Ltd. v. Chloe Foods Corp.*, No. 08-4248, 2009 WL 1687484 at *2 (D.N.J. June 16, 2009) (quoting *Days Inn Worldwide Inc. v. Mayu & Roshan, LLC,* No. 06–1581, 2007 WL 1674485, at *3 (D.N.J. June 8, 2007)). Accordingly, upon review of the relevant factors, and considering the absence of any defenses, I find that the there is a likelihood that

consumers would be confused by the Defendant's use of the marks. I therefore find Plaintiffs claims of trademark infringement and unfair competition under the Lanham Act to be legally sufficient.

## V. PREJUDICE TO THE PLAINTIFF

Second, I am persuaded that Plaintiff would suffer prejudice if default judgment were denied. Defendants were properly served nearly five months ago, yet failed to appear or defend themselves in any manner. *See Teamsters Pension Fund of Philadelphia & Vicinity v. Am. Helper, Inc.,* CIV. 11–624 JBS/JS, 2011 WL 4729023, at *4 (D.N.J. Oct. 5, 2011). Moreover, on at least one occasion identified in the Complaint, Defendants persisted in the use of Plaintiff's mark after its registration had been made clear to them in a written communication from Plaintiff's counsel. [Am. Compl., ¶14]. Given Defendants' continued infringement and refusal to offer an explanation or justification, I find that Plaintiff would suffer ongoing harm and prejudice if a default judgment were denied. Plaintiff has been prejudiced by Defendants' failure to answer because it has incurred additional costs and attorney's fees associated with protecting its rights and because Defendants' failure to appear has impeded Plaintiff's ability to proceed in this action, including his ability to gain access to relevant discovery. It would be inequitable to allow Defendant to preclude Plaintiff's requested relief by simply failing to appear.

## VI. CULPABILITY OF THE DEFENDANT

Third, absent any evidence to the contrary, "the Defendant's failure to answer evinces the Defendant's culpability in its default. There is nothing before the Court to show that the Defendant's failure to file an answer was not willfully negligent." *Teamsters Pension Fund of Philadelphia & Vicinity,* 2011 WL 4729023, at *4 (citing *Prudential Ins. Co. of America v. Taylor,* No. 08–2108, 2009 WL 536403 at *1 (D.N.J. February 27, 2009) (finding that when there is nothing before the court to suggest anything other than that the defendant's willful negligence caused the defendant to fail to file an answer, the defendant's conduct is culpable and warrants default judgment)). Defendants were served with the Complaint in March of 2013. [Declaration of David Mitchell, Process Server, dated March 8, 2013; Decl. of David Mitchell, Process Server, dated March 20, 2013]. Defendants have not responded in any manner.

## VII. REMEDIES

### A. Injunctive Relief

Plaintiff requests that the Court enter a permanent injunction against Defendants, enjoining them from any further infringement of THE EBONYS mark as well as enjoining them from further unfair competition in the provision of musical performances. Under the Lanham Act, an injunction is a "usual and standard remedy." 5 J. Thomas McCarthy, Trademarks & Unfair Competition § 30:1 (4th ed. 2006); *Lermer Germany GmbH v. Lermer Corp.,* 94 F.3d 1575, 1577 (Fed. Cir. 1996). The Supreme Court requires, in general, that any plaintiff seeking a permanent injunction show

(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay, Inc. v. MercExchange, LLC,* 547 U.S. 388, 391 (2006) (citations omitted). The Court may issue a permanent injunction in the context of a default judgment where these requirements are met. *See Coach, Inc. v. Ocean Point Gifts,* CIV.A.09–4215 JBS, 2010 WL 2521444, at *10 (D.N.J. June 14, 2010). The Lanham Act in particular contains a specific statutory authorization for permanent injunctive relief to prevent or restrain trademark infringement. 15 U.S.C. § 1116(a). I find that a permanent injunction is warranted here.

First, I find that Plaintiff would suffer irreparable injury if Defendants were to continue use of THE EBONYS mark. The Court has found that Plaintiff has proven violations of sections 32 and 43(a) of the Lanham Act; accordingly, Plaintiff has shown actual success on the merits, and in turn, has suffered an irreparable injury. *Citizens Fin. Group, Inc. v. Citizens Nat'l Bank of Evans City,* 383 F.3d 110, 125 (3d Cir. 2004) (trademark infringement amounts to irreparable injury as a matter of law). Specifically, according to Plaintiff, Defendants continue to infringe Plaintiff's mark by using it in their promotional materials, in connection with Defendants' sale of tickets to their live performances, which are similar to the services sold by Plaintiff under his registered service mark. This Circuit has recognized that "[g]rounds for irreparable injury include loss of control of reputation, loss of trade, and loss of good will." *Kos Pharm., Inc.,* 369 F.3d at 726 (quoting *Pappan Enters., Inc. v. Hardee's Food Sys., Inc.,* 143 F.3d 800, 805 (3d Cir. 1998)). Furthermore, "trademark infringement amounts to irreparable injury as a matter of law." *Id.* (quoting *S & R Corp. v. Jiffy Lube Int'l, Inc.,* 968 F.2d 371, 378 (3d Cir. 1992)).

I also find that an injunction is appropriate here because monetary damages are inadequate to compensate Plaintiff for trademark infringement and unfair competition particularly where they are ongoing. *See Opticians Ass'n of Am. v. Indep. Opticians of Am.,* 920 F.2d 187, 195 (3d Cir. 1990) (reasoning, in the context of a preliminary injunction, that "[g]rounds for finding irreparable injury include loss of control of reputation, loss of trade, and loss of good will"). Defendant's continued infringing activity threatens Plaintiff's THE EBONYS group's reputation and goodwill. The remedy of injunctive relief will protect Plaintiff against the threat of future infringement, a threat that cannot be averted by compensatory relief alone. *See Coach, Inc. v. Bags & Accessories,* CIV.A. 10–2555 JBS–J, 2011 WL 1882403, at *9 (D.N.J. May 17, 2011) (citation omitted) (concluding that while "a remedy at law would provide a degree of monetary relief," it would "not compensate for the injury" to plaintiff's "reputation or necessarily prevent future trademark infringement").

In balancing the hardships, I find that equity indeed warrants the relief Plaintiff seeks. Defendant will not be unduly burdened by an injunction. The only "hardship" imposed upon Defendant is that it refrain from engaging in unlawful conduct. *Id.* Moreover, Defendant has continued its infringing behavior even upon notification of Plaintiff's protected mark. Finally, I find that the public interest would not be disserved by issuing an injunction. To the contrary, the public can only benefit from the cessation of infringement. There is certainly a public interest in a truthful and accurate marketplace, while there is no public interest served by consumer confusion. *See Kos Pharm., Inc.,* 369 F.3d at 730.

Accordingly, Defendants, their partners, agents, servants, representatives, employees, successors, and all other persons in active concert or participation with Defendants, are hereby permanently enjoined and restrained from the following:

a. Doing business under the name THE EBONYS;

b. Filing for any future corporate names that include the phrase THE EBONYS or confusingly similar variations thereof.

c. Using, in any manner, the term THE EBONYS and/or any confusingly similar designation alone or in combination with other words or designs as a trademark, trade name component, or otherwise, to market, advertise, or identify any product and/or service not produced, offered, or authorized by Plaintiff, Mr. William Howard;

d. Using, in any manner, THE EBONYS service mark or any mark confusingly similar to THE EBONYS mark in connection with Defendants' goods or services in such a manner that is likely to create the erroneous belief that the goods or services are authorized by, sponsored by, licensed by, or are in any manner associated with Plaintiff;

e. Otherwise infringing upon THE EBONYS mark;

f. Causing likelihood of confusion or injury to business reputation of THE EBONYS mark; and

g. Committing any other act or making any other statement that infringes Plaintiff's service mark, or constitutes an active service mark infringement or unfair competition under federal common law or the common law.

## B. Compensatory and Actual Damages

Plaintiff has requested $2,500 in compensatory damages for "8 shows" not identified in the Complaint or accompanying documents.[2] In the absence of further proofs, this Court cannot award the requested compensatory damages. The amount of damages will be determined upon submission of a declaration by Plaintiff's counsel along with accompanying exhibits evidencing specific losses.

## C. Attorney's Fees and Costs

Finally, Plaintiff asks this Court to award reasonable attorney's fees, pursuant to 15 U.S.C. § 1117. Section 35(a) of the Lanham Act provides: "The court in exceptional cases may award

---

[2] In briefing, Plaintiff identifies as incidences of infringement performances by Defendants, using the name "the Ebonys," at the H&H Community Center in Philadelphia, Pennsylvania, on August 11, 2012, and December 31, 2012, as well as a planned performance at the Pyramid Temple in Philadelphia on June 15, 2013, which may have occurred since the filing of Plaintiff's brief. These incidences are not evidenced in sworn affidavits or alleged in the Amended Complaint, and accordingly are not properly before the Court.

reasonable attorneys' fees to the prevailing party." 15 U.S.C. § 1117(a). "While the statute does not explicitly define the term 'exceptional,' generally a trademark case is exception for purposes of an award of attorneys' fees when the infringement is malicious, fraudulent, deliberate or willful." *Louis Vuitton Malletier and Oakley, Inc. v. Veit,* 211 F.Supp.2d 567, 585 (D.N.J. 2002) (citing *Securacomm Consulting, Inc. v. Securacomm, Inc.,* 224 F.3d 273, 280 (3d Cir. 2000). A plaintiff may prove willfulness by demonstrating that the defendant continued infringing behavior after being given notice. Alternatively, a court may infer willfulness from the fact that a defendant refuses to respond to the plaintiff's complaint or subsequent motion for default judgment. *Louis Vutton Malletier,* 211 F. Supp. 2d at 583 ("The failure of Defendants to appear at the Evidentiary Hearing ... amounts to their conscious snubbing and blatant disregard of both the legal system and the rights of the Plaintiffs. The aforementioned conduct was willful."); *Piquante Brands Int'l, Ltd. v. Chloe Foods Corp.*, No. 3:08CV4248, 2009 WL 1687484 at *7 (D.N.J. June 16, 2009) (finding the defendant's failure to respond to the plaintiff's complaint as demonstrative of willfulness); *Chanel, Inc. v. Gordashevsky,* No. 05–5270, 2007 WL 316433, at *5 (D.N.J. Jan.29, 2007) (same).

As discussed above, Defendant's conduct constitutes willful infringement. Defendants continued to use THE EBONYS mark after Plaintiff notified Defendants of his federal registration and objected to the continued use of the mark. These circumstances are sufficiently exceptional. Accordingly, I will award reasonable attorney's fees and costs. *See* 15 U.S.C. § 1117(a) (allowing for the award of costs); *see also* Fed. R. Civ. P. 54; *St. Paul Fire & Marine Ins. Co. v. AVH Trucking LLC,* CIV.A. 07–4802(WHW), 2008 WL 4601771, at *5 (D.N.J. Oct. 15, 2008) ("Pursuant to Federal Rule of Civil Procedure 54(d)(1), costs other than attorney's fees should be allowed to the prevailing party on a motion for default judgment.").

While Plaintiff has requested specific figures representing attorney's fees and costs, Plaintiff has not yet submitted proofs of these amounts. The amount of fees and costs will be determined upon an application and accompanying affidavit of counsel pursuant to Local Rule 54.1, Fed. R. Civ. P. 55. *See E.A. Sween Co., Inc. v. Deli Exp. of Tenafly, LLC*, No. 2:13-6337, 2014 WL 1911878 (D.N.J. May 13, 2014).

CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Entry of Default Judgment is granted, Defendants are enjoined from further infringement of Plaintiff's mark and from unfair competition with Plaintiff, and Plaintiff's request for compensatory damages, attorney's fees, and costs, is granted subject to the submission of further proofs.

An appropriate Order shall follow.

Dated: _____8/12/2014_____          _____/s/ Freda L. Wolfson___
                                     The Honorable Freda L. Wolfson
                                     United States District Judge